M. E. McNUTT et al., Appellees, v. JOHN L. NELLANS, Appellant.

No. 16,383.

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE — Doubtful or Unmarketable Title. Equity will not compel a purchaser under an executory contract for the sale of land to accept the title if doubtful or unmarketable.

2. ——— "Doubtful" Title Defined. A title is doubtful if it exposes the party holding it to the hazard of litigation.

3. ——— Vendor's Title Held Doubtful. In an action to recover money paid on the purchase price of land, on account of the failure of the vendor to furnish an abstract showing clear title, it appeared that the vendor's title rested upon a deed executed by a foreign assignee solely by virtue of an order of a court in the state of Iowa. Before the action was tried the vendor obtained a judgment quieting his title, upon service by publication, against the foreign assignor, the assignee and the party to whom the assignee had conveyed, and asked for specific performance against the plaintiff. Held, that the title tendered is so doubtful that the plaintiff should not be compelled in equity to accept the same.

4. CONTRACTS—Action to Recover Money Paid—Prayer by Defendant for Specific Performance—Estoppel to Assert Invalidity of Contract—Homestead—Joint Consent. In such an action, where the defendant answers alleging a full compliance with the terms of the contract and asks for specific performance and judgment for the balance of the purchase money, and offers proof showing the execution by himself and wife of a deed conveying the land to the plaintiff, he is estopped to claim in the same action that the contract for the sale of the land is void on the ground that the land comprises a homestead occupied by himself and wife and that the wife failed to join in the contract.

Appeal from Decatur district court; WILLIAM H. PRATT, judge. Opinion filed May 7, 1910. Affirmed.

J. F. Peters, for the appellant.

L. C. Uhl, and L. C. Uhl, jr., for the appellees.

The opinion of the court was delivered by

PORTER, J.: The McNutt brothers sued John L. Nellans to recover $500 paid him on a contract for the purchase of 160 acres of land in Decatur county, alleging a failure on his part to furnish an abstract showing a clear title, according to the terms of the contract. The defendant contended that he had fully complied with his contract, and asked for specific performance and a judgment against the plaintiffs for the balance of the purchase price and damages. The court found the facts and conclusions of law separately, and gave judgment for the plaintiffs. The defendant appeals.

The contract for the sale of the land was made April 11, 1907. At that time the plaintiffs paid the defendant $500, and agreed to pay the balance of $5500 July 1, 1907, when the deed and abstract of title were to be delivered. The deed to the land was executed by the defendant and his wife in June, and deposited in a bank agreed upon as a depositary. At the same time the abstract of title was sent to the plaintiffs, who retained it until July 15, when it was returned with a request for certain affidavits and requiring the payment of taxes. These requests were complied with sometime in July. The abstract showed title in the Lewis Investment Company, of Des Moines, Iowa, which took a conveyance of the fee October 12, 1889. Afterward, in 1895, the investment company, which was a corporation organized under the laws of the state of Iowa, made a voluntary assignment for the benefit of its creditors. On the first of June, 1897, the assignee obtained an order of the district court of Polk county, Iowa, authorizing him to convey the land in question, and the title of the defendant rests upon a deed executed by the assignee solely by virtue of the order of the Iowa court.

August 3, 1907, the attorneys for the plaintiffs notified the defendant that the abstract was not sufficient, for the reason that it failed to show a decree or order of

a Kansas court authorizing the foreign assignee to convey the land. In the same letter the defendant was notified that unless the abstract was perfected in this respect on or before August 8 the contract would be terminated and the plaintiffs would demand the return of the $500.

There is no serious contention here that the deed of the foreign assignee conveyed any title. (*Thompkins v. Adams,* 41 Kan. 38; *Watson v. Holden,* 58 Kan. 657.) The defendant concedes that his title was defective, but insists that he was entitled to a reasonable time within which to perfect it. In this we concur; and it may be said that the five days given him by the letter of August 3 was not a reasonable time to perfect his title. (*Bell v. Sternberg,* 53 Kan. 571, 574.) The main contention of the defendant is that before the judgment was rendered in this action he had commenced a suit in the same court to quiet his title, and had obtained a judgment which perfected it; and the court finds that such suit was duly commenced, that service was obtained on the several defendants therein by publication, and a decree was duly rendered quieting the title in the defendant. That decree was rendered on the 18th day of October, 1907, several months before the judgment in this case, and the defendant relies upon the doctrine that equity will not relieve against a sale of land for a defect in the title of the vendor if at the time of the decree he is able to make a good title. The soundness of the general rule may be granted. (*Frederick v. Birkett,* 37 Kan. 536; *Bell v. Sternberg,* supra.) But equity will not, by a decree for specific performance, compel a party to accept a title which is so doubtful that it may be exposed to litigation. The court will not cast upon him the risk of litigation and the embarrassment of a questionable title. (*Townshend v. Goodfellow,* 40 Minn. 312; *Daniel v. Shaw,* 166 Mass. 582; *Conley v. Finn,* 171 Mass. 70; 26 A. & E. Encycl. of L. 111; *Vought et al. v. Williams,* 120 N. Y. 253; *Morri-*

McNutt v. Nellans.

*son v. Waggy et al.,* 43 W. Va. 405; *Fleming et al v. Burnham et al.,* 100 N. Y. 1; *Simon v. Vanderveer,* 155 N. Y. 377.)

The objection which the plaintiffs still make to the title is that the judgment was rendered upon service by publication and may be vacated at any time within three years. The doctrine, however, is established by numerous decisions that the title of a purchaser in good faith who relies upon a judgment quieting title to the land in his grantor can not be affected or disturbed by the vacation of the judgment, but is protected by the express provisions of the statute. (Civ. Code, § 77; Gen. Stat. 1901, § 4511; Code 1909, § 83; *Howard, Adm'r, v. Entreken, Adm'r,* 24 Kan. 428; *Loan Co. v. Cable,* 65 Kan. 306; *Randall v. Barker,* 67 Kan. 774.) If, therefore, the plaintiffs had taken a conveyance from the defendant their title would not be affected by the vacation of the judgment, provided they could prove that they purchased in good faith and in reliance upon the judgment. But could they establish their innocence as purchasers in the face of a record disclosing that they had objected to the title for the same defect, both before and after the judgment, and had finally accepted it, not in reliance on the judgment, but because compelled to do so by the decree of a court in another proceeding to which none of the defendants in the first action was a party? Moreover, the title they agreed to accept by the terms of their contract was to be a clear title, not a doubtful one which might ultimately be made clear by litigation.

There is another feature of the judgment which, though not suggested in the briefs, in our opinion adds to the doubtful character of the title. The judgment binds no one except those who were parties to it and their privies. The court finds that the only defendants were the Lewis Investment Company, Nelson Royal, its assignee, and H. Gardner Talcott, to whom the assignee conveyed the land. While the foreign assignee and all creditors of the assignor who participated in the

assignment, are bound by the judgment, so far as the rights of a purchaser relying upon it are concerned, it binds no one else. Creditors of the assignor who were citizens and residents of Kansas and who did not participate in the assignment would not be bound by the judgment; and whether there were such creditors does not appear.

It is manifest, therefore, that the title is not free from reasonable doubt. Whether courts shall decree specific performance always rests in their sound judicial discretion, and where the title is doubtful the vendee will not be compelled to take it. In determining whether a title is so doubtful that equity will refuse to compel a purchaser to accept it the court is not required to pass upon the validity of the title itself; the parties whose possible claims may affect the title are not before the court, and no judgment which the court could render would bind them. It is a general rule that under a contract for a clear title equity will not compel the acceptance of a title which is not a marketable one. A marketable title in equity is one in which there is no doubt involved, either as to matter of law or fact. (Maupin Mark. Title to Real Estate, 2d ed., ch. 31; *Herman v. Somers et al., Appellants,* 158 Pa. St. 424; *Fleming et al. v. Burnham et al.,* 100 N. Y. 1; *Vought et al. v. Williams,* 120 N. Y. 253.)

"And every title is doubtful which invites or exposes the party holding it to litigation. . . . If there be a color of an outstanding title which may prove substantial, though there is not enough in evidence to enable the chancellor to say that it is so, a purchaser will not be held to take it, and encounter the hazard of litigation with an adverse claimant." (*Speakman v. Forepaugh,* 44 Pa. St. 363, 371.)

The defendant set up as a further defense that the land in controversy is a homestead occupied by himself and his wife, and contends that because his wife did not join in the contract of sale it was void, relying upon the doctrine of *Thimes v. Stumpff,* 33 Kan. 53, and *Hodges*

*v. Farnham,* 49 Kan. 777, where it was held that money given in part payment of an agreement to convey a homestead, in which contract the wife does not join, can not be recovered back by the purchaser. The defendant is not in a situation to take advantage of this doctrine of the law. He can not be permitted to blow hot and cold—to seek the specific performance of a contract and in the same action claim that the contract itself is void. Besides, his wife joined with him in the execution of the deed, and, so far as the record shows, makes no objection to carrying out the terms of the contract.

The court's findings that the plaintiffs had fully complied with their part of the contract and that the defendant had failed to furnish an abstract showing clear title were sustained by the evidence, and it necessarily follows that the plaintiffs were entitled to recover the purchase money paid.

The judgment is affirmed.