ESTELLA VAN GUNDY et al., *Appellees,* v. CLUM C. SHEWEY, *Appellant.*

No. 18,292.

SYLLABUS BY THE COURT.

1. MARKETABLE TITLE—*Deed from Heirs—Estate Not Probated.* A vendor's title is not necessarily unmarketable because derived through deeds from the heirs of a deceased owner whose estate was not probated.

2. —————— *Title May be Shown to be Good by Proper Affidavits.* In such a case an abstract of title may be made to exhibit a good title by attaching to it the affidavits of credible persons who know the facts showing intestacy, heirship, capacity to convey, and the satisfaction of all claims against the estate of the deceased.

3. —————— *Same.* When such a showing has been made it devolves upon the vendee objecting to the title to show wherein it is bad or doubtful or that the evidence necessary to establish the facts is so uncertain or inaccessible as to render the title doubtful.

4. —————— *Trust Deed—Trustee Named Therein Has no Present Interest in the Land.* In 1888 the owner of a tract of land gave a trust deed or mortgage to a person designated as trustee for a third person designated as beneficiary. The

beneficiary assigned the mortgage and the assignee released it. The trustee has acquiesced in the release for a period of time exceeding that prescribed by the statute of limitations. *Held,* the trustee has no interest in the land which is now or may hereafter become substantial, and that the title is not doubtful because he did not join in the release.

5. PUBLICATION SERVICE—*Affidavit Therefor Fatally Defective.* Under section 79 of the civil code, which takes the place of section 73 of the old code, an affidavit for service by publication which wholly fails to show, either by direct statement or by way of inference from other statements, that the plaintiff diligently inquired as to the residence of the defendants to be served by publication and was unable to learn the place of such residence is void.

6. TAX DEED *and Adverse Possession Constitute Marketable Title.* Various objections by a vendee to a title based upon a tax deed which is good on its face, which has been of record for more than fifteen years, and under which the vendor has been in possession for more than five years considered and held, that the tax deed and the vendor's possession constitute a title sufficient to extinguish all rights, titles, and interests of prior origin.

Appeal from Norton district court. Opinion filed July 5, 1913. Affirmed.

*Willard Simmons,* of Norton, for the appellant.

*H. O. Caster,* of Oberlin, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was brought by the plaintiff, Estella Van Gundy, as vendor, to compel the defendant, Clum C. Shewey, as vendee, to specifically perform a contract for the sale of a quarter section of land. Judgment was rendered for the plaintiff, and the defendant appeals.

The defendant declined to perform on his part because he was not satisfied with the title offered. The contract did not guarantee a perfect record title, and consequently the defendant must be satisfied with a marketable title. The subject of what is a marketable

Van Gundy v. Shewey.

and what a doubtful title is sufficiently discussed in the case of *McNutt v. Nellans,* 82 Kan. 424, 108 Pac. 834.

The plaintiff derived title through deeds from the heirs of George Fossler, deceased, whose estate was not probated. Attached to the abstract furnished to the defendant is a showing by the affidavit of a person having knowledge of the facts that Fossler died intestate possessed of the real estate in question, that the grantors in the deeds referred to were his heirs and only heirs, that they were of legal age when they conveyed, and that all of Fossler's debts at the time of his death and his funeral expenses were paid in full.

A title is not unmarketable because there is a break in the record occasioned by the death of the owner and consequent devolution of title by operation of law. From the very nature of the case, however, the only way in which an abstract can be made to exhibit a good title in such instances is by a showing of the kind just described. When a vendor has by this means exhibited a title free from doubt, it devolves upon a vendee objecting to it to show wherein the title is bad or doubtful. (Maupin on Marketable Title to Real Estate, 2d ed., § 295.) The defendant does not dispute any of the facts set forth in the affidavit referred to, or show that he would labor under any difficulty in proving them should occasion arise. Therefore the title appears to be free from doubt so far as the matter under consideration is concerned.

In 1888 the then owner of forty acres of the land gave a mortgage upon it to Edward E. Holmes, as trustee for Willis G. Myers, as beneficiary. The beneficiary assigned the mortgage and the assignee released it many years ago. Technically, perhaps, the release may be said to be defective because the trustee did not join. Since, however, satisfaction of the debt has been acknowledged by the party entitled to the benefit of the security, and since the release has been acquiesced in by the trustee and the beneficiary for a

period of time exceeding that prescribed by the statute of limitations, there is no fair ground for doubting that the mortgage is no longer a lien upon the land. The plaintiff invokes the aid of chapter 301 of the Laws of 1905 (Gen. Stat. 1909, §§ 5222, 5223), which provided that recorded assignments and releases of mortgages in certain instances shall be deemed to be valid, and required them to be challenged, if at all, within one year from the time when the act took effect (June 8, 1905). It is possible that by a liberal interpretation of the statute the release in question may be brought within its terms, but it is not necessary to decide the question since it is plain that the trustee has no interest in the land which is now or which may hereafter become substantial.

A number of claimed defects in the title to the south half of the quarter section were pointed out and time was extended to the plaintiff in which to cure them by an action to quiet title. Service was made upon the defendants in such action by publication. Section 79 of the new code radically changed the requirements of section 73 of the old code respecting the contents of the affidavit for service by publication. It reads as follows:

"Before service by publication can be made, an affidavit must be filed, stating the residence, if known, of the defendant or defendants sought to be served, and if not known, stating that the plaintiff has diligently inquired as to the residence of such defendant or defendants and has been unable to learn the place of such residence and that the plaintiff is unable to procure actual service of summons on such defendant or defendants within this state, and showing that the case is one of those mentioned in the preceding section. When such affidavit is filed the party may proceed to make service by publication." (Civ. Code, § 79.)

In the suit to quiet title the affidavit stated that the defendants were nonresidents of the state of Kansas, that their residence was unknown to the plaintiff, and

that actual service could not be made upon them in the state of Kansas, but it wholly failed to show, even by way of inference from other statements, that the plaintiff had diligently inquired as to the residence of the defendants and had been unable to learn the place of such residence.  Under the well-known rule the total omission of a material averment renders the affidavit and the service based upon it void, and consequently the decree rendered did not aid the title.

The plaintiff has title to the south half of the quarter section by virtue of a tax deed issued in 1896, good on its face and of record for more than fifteen years at the time of the trial, during all of which time the land has been in the possession of the plaintiff and her grantors.  The plaintiff herself had been in possession for more than three and one-half years when the decree quieting her title was rendered, and there is no pretense that possession for more than five years is not readily provable.  The defendant claims the tax deed is void on its face because the consideration stated can not be arrived at from the data furnished by the antecedent recitals, but it is easy enough to do so under the liberal rules which have been adopted for the interpretation of tax deeds which have been of record for five years or more.  This deed effectually extinguishes the basis of all claims which might, according to the abstract, be asserted by the defendants in the action to quiet title.  Indeed the defendant made no serious objection to the tax title until after judgment had been rendered in the suit to quiet title.  He now argues that the suit to quiet title exposed the tax deed to attack for irregularities in the proceedings upon which it was based, and consequently destroyed its impregnability as a muniment of title should any of the defendants choose to treat the void service as valid and ask to be let in to defend.

The decree quieting title purports to be based upon

17—90 Kan.

adverse possession, and there is nothing whatever in the proceedings to indicate that the right of action was predicated upon the tax deed. The only defendants who have shown a disposition to assert an interest in the land (the most insistent one being the holder of a mortgage now twenty-five years in default) were promptly notified of the commencement of the suit. They made default, and consequently can not now open the judgment. The possible claims of the other defendants, all of whom defaulted, are quite negligible and the time for opening the judgment has almost expired. If, however, any one should come in, the defendant as successor to the plaintiff's title will have the right to be substituted and to dismiss, and the tax deed and the present plaintiff's possession alone constitute a title sufficient to extinguish all rights, titles, and interests of prior origin. (Laws 1911, ch. 232, § 3.)

Several questions of practice have been presented but the court has passed them by and has given its attention to the real character and strength of the title which the defendant has been ordered to accept. Believing that such title is good beyond all reasonable doubt, the judgment of the district court if affirmed.