**CONTINENTAL OIL CO. v. MULICH et al.**

No. 979.

Circuit Court of Appeals, Tenth Circuit.
April 11, 1934.

Rehearing Denied May 15, 1934.

Samuel D. Newkirk, of Kansas City, Mo.
(Chas. M. Blackmar and Meservey, Michaels,

Blackmar, Newkirk & Eager, all of Kansas City, Mo., on the brief), for appellant.

A. L. Berger and Blake A. Williamson, both of Kansas City, Kan. (James K. Cubbison, of Kansas City, Kan., on the brief), for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal by the Continental Oil Company from a decree for reformation and specific performance of an option contract.

The cause was referred to the Honorable Clifford Histed as special master. He filed a report evidencing thoroughness and ability, which was approved and confirmed in all matters by the trial court.

The material facts are not in dispute and are these: In the latter part of 1929 the Continental Company requested the J. C. Nichols Real Estate Company to submit tracts of land in Kansas City, Kansas, suitable for filling station sites. In December, 1929, the Nichols Company submitted to the Continental Company a booklet describing a number of tracts (including the Mulich tract here involved), which the Nichols Company deemed suitable for filling station sites. With respect to the Mulich tract, the booklet stated:

"21st and State Avenue (or Hoel Avenue). This tract opposite and east of the Phillips Service Station is probably the most outstanding location along the route of U. S. #40, coming into the city.

"The next attached plat shows the dimensions of the two lots, which is ample. The parking owned by the city and shown on the plat as 20 feet, can be secured, we understand, by deed from the city with little or no cost, which would greatly enhance the value for station purposes.

"Under Ordinance #25052 State Street is to become a traffic way, repaved and widened from 3rd Street west to the City limits. The street is to be known as State Avenue Trafficway, and will no doubt carry much of U. S. #40 traffic."

Dawson, the agent of the Nichols Company, and Cowden, assistant division manager of the Continental Company, inspected the tract on two occasions in January, 1930. They had with them the plat referred to above, and on one of such inspections Dawson stepped off the ground.

Thereafter Cowden advised Dawson that the Continental Company desired to purchase the Mulich tract. At Cowden's request, Dawson prepared the option contract; he erroneously described the Mulich tract therein as follows:

"All of Lots 36 & 37, Block 3, Kerr's Park, an addition in and to the city of Kansas City, Kansas."

The contract gave the Continental Company an option to purchase the property within ten days for $17,500. It was conditioned on the Continental Company's being able to secure a permit to erect a filling station thereon. It provided that the Mulichs should furnish a merchantable abstract of title, showing merchantable title in them free from all liens and encumbrances, and should convey to the Continental Company by warranty deed a merchantable title to the property free and clear of all encumbrances. On May 8, 1930, the Continental Company informed the Mulichs that it had elected to exercise the option, and requested them to furnish the abstract of title. Shortly thereafter the Mulichs delivered to the Continental Company an abstract of title certified by a duly licensed abstractor.

In transmitting the abstract to its attorneys for a title opinion, the Continental Company referred to the lots as "lots 36 and 37, Block 3, Kerr's Park, less part taken by the city." On June 20, 1930, the Continental Company received the title opinion which called attention to the fact that a portion of the lots had been condemned by the city for the opening of 21st Street and deeds therefor had been given to the city. It stated that the abstract showed an unreleased mortgage for $4,000, a personal judgment against the Mulichs for $450, and unpaid taxes for 1927, 1928, and 1929. It recommended that the lots be surveyed. The Continental Company had such survey made and paid the cost thereof.

Dawson testified that due to mistake he had failed to exclude from the description in the option the portion of lots 36 and 37 conveyed to the city; that all the maps and plats submitted to Cowden showed that a portion of the lots had been taken by the city for street purposes; and that Cowden and he had knowledge of that fact when the option was prepared.

Cowden testified that he had inspected the property; that he knew the Continental Company was buying only those portions of lots 36 and 37 shown on the plat, knew the dimensions thereof, and advised the home office of the Continental Company of such dimensions.

The title opinion stated that the following should be furnished: A certificate of the

clerk of the United States District Court for the District of Kansas with respect to judgments in that court; a certificate of the county treasurer of Wyandotte County, Kansas, and of the city treasurer of Kansas City, Kansas, as to the unpaid taxes against the property; a recertification of those parts of the abstract where the certificate was more than five years old; and a recertification of the abstract down to date.

The requirements set forth in the title opinion were complied with, and the abstract was extended and recertified February 4, 1931.

Shortly after the acceptance of the option, it was discovered that the property was zoned for residential purposes. Representatives of the Nichols Company assured the Continental Company that it would be a simple matter to have the property rezoned for business purposes. The Mulichs employed Williamson, an attorney, to procure a rezoning of the property. Petitions to rezone were secured from owners of adjoining property and presented to the planning commission on January 5, 1931. The planning commission recommended that the property be rezoned as business property, and certified its finding and recommendation to the board of city commissioners.

On February 17, 1931, the city commission rejected the recommendation of the planning commission and refused to rezone the property. The Mulichs then filed a suit in the district court of Wyandotte County, Kansas, to set aside the zoning ordinance. On April 21, 1931, the state court held that the zoning ordinance was illegal and void in so far as it affected the Mulich tract, and that the city should issue permits for the construction of commercial buildings thereon, and ordered that judgment should be entered for the Mulichs.

On April 27, 1931, Cowden and Williamson secured a permit to build a filling station on the property. The permit required a compliance with the zoning ordinance, but the ordinance had been adjudged invalid as to that property. When the permit was secured, arrangements were made to close the deal the following week.

On May 7, 1931, the city commission directed the city attorney to appeal from the decree of the state court. On May 26, 1931, Mr. Cowden sought the aid of W. C. Rickel, an attorney and business man of Kansas City, to aid in securing a rescission of the order directing the appeal. On June 30, 1931, the Mulichs filed a claim against the city for damages by reason of its action in directing an appeal. The city attorney advised the city commission that an appeal would be useless, and that the city might be liable for damages for oppressive delay. At a meeting of the city commission held on July 14, 1931, it was agreed that the city would rescind the order directing the appeal and that the Mulichs would withdraw their claim for damages. The order was rescinded and the claim withdrawn.

The Continental Company co-operated with the Mulichs in the proceedings taken to relieve the property from the restrictions of the zoning ordinance, had knowledge of and acquiesced in the steps taken in that behalf, and did not refuse to carry out the option until after such proceedings had been fully completed. After the city had rescinded the order directing the appeal the Continental Company made no further requirements, and retained the abstract in its possession. On July 27, 1931, the Mulichs through Williamson demanded that the Continental Company close the deal. The Continental Company refused, and this suit followed.

The decree adjudged that the contract should be reformed to exclude the portion of lots 36 and 37 theretofore conveyed to the city, and then be specifically enforced. It adjudged that the Mulichs execute and file with the clerk of the court a good and sufficient warranty deed conveying the property to the Continental Company free and clear of all encumbrances and liens, and procure and file with the clerk an abstract of title certified to date, and a certificate of the county treasurer showing payment of all unpaid taxes against the property. It adjudged that the Continental Company should pay to the clerk $19,442.46 with interest from the date of the commencement of the suit, or in the alternative, make payments of the amounts due on the mortgage and judgment and for taxes, and deduct the aggregate of such payments from the amount paid to the clerk. It further adjudged that, in the event the Continental Company did not pay off the amount due on the outstanding mortgage judgment and taxes, the clerk of the court under the direction of the special master should pay and discharge such liens and taxes, and deliver the deed to the Continental Company, and then pay the balance of the purchase price to the Mulichs.

It retained jurisdiction over the cause for the purpose of disposing of any matters not covered by the decree, or which might arise in the carrying out of the decree.

■■ The proof established beyond a reasonable doubt that the Mulichs intended to sell and the Continental Company intended to purchase lots 36 and 37, less the portion thereof which had been conveyed to the city, and that the failure to properly describe the property in the option was due to the mistake of the scrivener.

When the parties have agreed to the terms of a contract, and through mutual mistake in reducing the contract to writing fail to express the contract agreed upon and intended, equity may grant reformation. Russell v. Shell Petroleum Corp. (C. C. A. 10) 66 F. (2d) 864, 866; Southern Surety Co. v. United States Gas Iron Pipe & Foundry Co. (C. C. A. 8) 13 F.(2d) 833, 837; Columbian N. Life Ins. Co. v. Black (C. C. A. 10) 35 F.(2d) 571, 573, 71 A. L. R. 128; Pomeroy's Equity Juris. (4th Ed.) vol. 2, § 870.

The Mulichs were clearly entitled to reformation.

■■ The outstanding judgment, mortgage lien, and unpaid taxes did not excuse the Continental Company from performing its agreement to purchase the property. Where such outstanding liens may be satisfied out of the purchase price and discharged when the sale is consummated, the rule in Kansas is that they do not render the title so unmerchantable as to constitute a defense to a suit for specific performance. In re Shike's Estate, 131 Kan. 643, 293 P. 392, 395; Guild v. A., T. & S. F. Ry., 57 Kan. 70, 45 P. 82, 84, 33 L. R. A. 77, 57 Am. St. Rep. 312. See, also, Monarch Portland Cement Co. v. Washburn, 89 Kan. 874, 133 P. 156.

True, the contract called for a merchantable abstract, but when the Continental Company was apprised of such outstanding liens it made no objection thereto; instead it induced the Mulichs to spend time, effort, and money to cure other defects and to relieve the property from the zoning restrictions.

■ Failure to bring the abstract down to date after the proceedings to relieve the property from the zoning restrictions had been completed may not be urged by the Continental Company. It retained the abstract in its possession and made no request for further extension thereof. It has now been extended and certified to July 1, 1933.

■ The failure of the abstract to contain a certificate as to federal court judgments was cured, as requested in the title opinion, by a certificate of the clerk of the court showing there were no such judgments.

■ After the Mulichs had relieved the property from the restrictions of the zoning ordinance and had made it possible for the Continental Company to secure a permit to erect a filling station thereon, it was too late for the Continental Company to urge the objection that a building permit for a filling station could not immediately be secured. By its conduct the Continental Company had estopped itself so to do.

■ The failure of the clerk to enter a formal decree on the journal of the court in the state court suit is not of serious moment. See 60—3122, R. S. Kan. 1923.

The judgment was duly rendered when it was ordered or pronounced by the court. The entry in the journal is not the judgment, but formal evidence thereof. A judgment duly rendered is binding and enforceable between the parties although, due to neglect of the clerk, no formal entry has been made thereof. Sabine Hardwood Company v. West Lumber Co. (D. C. Tex.) 238 F. 611, 614, 616; Zadig v. Ætna Ins. Co. (C. C. A. 2) 42 F.(2d) 142, 143; United States v. Stoller (D. C. Wash.) 180 F. 910; Kinkel v. Chase, 102 Kan. 275, 169 P. 1134, 1135; Columbus Water-Works Co. v. City of Columbia, 46 Kan. 666, 26 P. 1046, 1049; Jackson v. Jarratt, 165 Tenn. 76, 52 S.W.(2d) 137, 138.

■ Under the facts here a tender of a deed to the Continental Company by the Mulichs was not a prerequisite to their right to maintain this suit. The Continental Company had repudiated the contract and notified the Mulichs that it would not purchase the property thereunder, and a tender would have been a useless and idle ceremony. Niquette v. Green, 81 Kan. 569, 106 P. 270, 274; Monarch Portland Cement Co. v. Washburn, 89 Kan. 874, 133 P. 156; Donahoe v. Franks (D. C. Pa.) 199 F. 262, 266, 267; Blanton v. Kentucky D. & W. Co. (C. C. Ky.) 120 F. 318, 348.

When the Continental Company was apprised that the property was zoned for residence purposes and that a building permit for a filling station could not be obtained immediately, it could then have rightfully refused to perform. But it did not so refuse. On the contrary, it co-operated with the Mulichs in the steps taken to relieve the property from the restrictions of the zoning ordinance, and induced the Mulichs to expend time, effort, and money to that end. When the city commission refused to rezone the property, the Continental Company again could have refused to perform. Instead of doing so, it told the Mulichs to proceed with

the suit to set aside the ordinance. It then knew that there might be an appeal from a judgment favorable to the Mulichs, and a delay incident thereto. When the judgment was obtained declaring the ordinance void, the Continental Company applied for a new permit. After an appeal was ordered, it joined in the efforts to have the appeal rescinded. The proceedings taken by the Mulichs to relieve their property from the restrictions of the zoning ordinance were carried out expeditiously and effectively.

We are of the opinion that the court rightly reformed the contract and adjudged that it should be specifically performed on the conditions set forth in the decree.

█ Since the decree made the Continental Company liable for interest from the date of the commencement of this suit, it should have required the Mulichs to account for rents received after that date. It is so modified and as modified affirmed.